IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ARTHUR ROGERS, JR., #205566, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:04-CV-622-MEF |
| ) | [WO] |
| ) | |
| DR. ROBBINS, *et al*., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Arthur Rogers, Jr. ["Rogers"], a state inmate, contends that defendants Dr. Michael E. Robbins, nurse Linda Lawrence and NaphCare Medical Services, Inc. ["NaphCare"] denied him adequate medical treatment during his confinement at the Kilby Correctional Facility. Rogers further asserts that defendant Lawrence acted with negligence in reviewing his medical records and violated his constitutional rights when on one occasion she opened mail addressed to him from counsel for defendant Robbins and NaphCare.

The defendants filed special reports and supporting evidentiary materials addressing each of the plaintiff's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment. *See Order of November 16, 2004 - Court Doc. No. 38.* Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of such motions, the

evidentiary materials filed in support thereof and Rogers' responses in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## I.  CLAIMS FOR RELIEF

Rogers maintains that during his confinement at the Kilby Correctional Facility the defendants acted with deliberate indifference to his diabetes.[1] Rogers also complains that defendant Robbins prescribed blood pressure medication to him which caused him to black out. Finally, Rogers asserts that defendant Lawrence acted with negligence in reviewing his medical records prior to his transfer to Mississippi and, on September 28, 2004, improperly opened a letter addressed to him from defense counsel.

The defendants deny they acted with deliberate indifference to Rogers' medical needs and, instead, maintain that they provided Rogers with all necessary treatment for his complaints. The medical records indicate that medical personnel evaluated and provided treatment to Rogers each time he reported to the health care unit with complaints.[2] The specific treatment prescribed depended upon the observations and evaluations of Rogers' condition by the attending health care professional.

To ensure continuous monitoring and evaluation of Rogers' diabetes, medical

---

[1] A thorough review of the complaint, as amended, indicates that the claims lodged against the named defendants relate to actions which began in June of 2003. *See April 16, 2004 Amended Complaint* at 7-8.

[2] The medical records are identified in the file as *Exhibit A to the November 15, 2004 Special Report of Linda Lawrence*.

personnel placed Rogers in the diabetic chronic care clinic.  Moreover, each time Rogers complained to health care personnel of medical problems, attending personnel evaluated Rogers and provided treatment in accordance with their assessment of his condition.  The medical records also demonstrate that Dr. Robbins and other attending physicians prescribed various medications for treatment of Rogers' numerous complaints, including insulin for his diabetes.  Additionally, medical personnel ordered medical profiles, therapeutic diets, medical lay-in slips, laboratory tests and other substantive treatment when they deemed  necessary upon evaluation of Rogers' complaints.  However, the medical records establish that Rogers refused to comply fully with the instructions of medical personnel regarding his diet, his prescribed medications and appointments in the health care clinic.

With respect to Rogers' complaint that defendant Lawrence failed to ensure that he received adequate medical treatment on the bus trip to a correctional facility in Mississippi, Lawrence  responds that:

> Mr. Rogers claims that he was not given his medication on July 7, 2003 while in transit from Kilby Correctional Facility to Tallahatchie Correctional Facility in Mississippi and that his blood sugar registered at 272 two hours prior to arriving in Mississippi.
> I personally did not administer Mr. Rogers' insulin, but based on my review of the medical records on July 7, 2003, as ordered by physicians, Mr. Rogers received 25 units of Insulin 70/30 at 3:00 a.m. at Kilby Correctional Facility and 15 units of Insulin 70/30 after noon at the Tallahatchie Correctional Facility in Mississippi.
> Recordings of Mr. Rogers' blood sugar levels from July 1, 2003 to July 6, 2003, while at Kilby and while receiving insulin, indicate it was not

3

uncommon for Mr. Rogers' blood sugar levels to range from 202 to 299.

*November 15, 2004 Special Report of Linda Lawrence - Court Document No. 35-2 (Affidavit of Linda Lawrence)* at 1-2. The medical records filed by the parties support these assertions.[3]

Dr. Robbins explains the treatment provided to Rogers as follows:

> In regards to Mr. Rogers' diabetes, he was evaluated by a nurse practitioner, under my direction, in June of 2003. The evaluation indicated that Mr. Rogers had elevated blood sugars consistent with diabetes and we immediately began Mr. Rogers on insulin. His blood sugars improved and shortly thereafter he was transferred by the Alabama Department of Corrections to another detention facility. Mr. Rogers returned to Kilby Correctional Facility in February of 2004. He was still on insulin and his blood sugar continued to be well controlled. We have seen Mr. Rogers on a consistent basis since that time to check his diabetes and have made periodic adjustments in his insulin. Despite Mr. Rogers' frequent non-compliance with our instructions regarding his diet, medications, and follow-up visits to the clinic, Mr. Rogers['] blood sugar has remained reasonably well controlled.
> Mr. Rogers['] vision has been checked a minimum of three times since his arrival at the Kilby Correctional Facility, once by an ophthalmologist. His vision has remained stable at 20/30 and 20/40 with his glasses which he has been provided.

*September 24, 2004 Special Report of Michael E. Robbins and NaphCare - Court Document No. 27 (Affidavit of Michael E. Robbins)* at 2.

## II. STANDARD OF REVIEW

---

[3]Although Rogers makes the purely speculative assertion that the notation on his medical records with respect to the 3:00 a.m. dosage on June 7, 2003 is the product of tampering, he presents no evidence to support this assertion. Moreover, even assuming arguendo that Rogers missed this one dosage of insulin, this would not, by itself, constitute deliberate indifference.

4

To survive the defendants' properly supported motions for summary judgment, Rogers is required to produce some evidence which would be admissible at trial supporting his constitutional claims. *See* Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary

judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving part, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Consequently, where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to any material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Rogers has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION

#### A.  Lack of Service on Roy Randy

In an amendment to his complaint, Rogers asserts that nurse Roy Randy accompanied the prisoner transport to Mississippi but failed to secure the necessary medication for treatment of his diabetes. Although the court attempted service on Randy, service was not perfected on this individual.[4] Throughout the proceedings in this case, the court repeatedly advised Rogers that it is his responsibility to provide the court with a correct address for service, informed him that he must monitor the case to ensure that all defendants he named had been served, and cautioned him that the failure to perfect service on a defendant would result in the named person not being considered a party in this case. *Order of July 20, 2004 - Court Doc. No. 19* at 4-5; and *Order of October 4, 2004 - Court Doc. No. 29* at 3.

The Federal Rules of Civil Procedure require that service must be made upon a defendant within 120 days after filing the complaint. Rule 4(m), *Federal Rules of Civil Procedure*. When a plaintiff fails to perfect service of process within this 120-day time period and does not establish good cause for such failure, dismissal of a defendant on whom service has not been perfected is mandatory. *Schnabel v. Wells,* 922 F.2d 726, 728 (11th Cir.1991) (interpreting the 120-day period as it appeared in Rule 4(j), *Federal Rules of Civil Procedure*, the predecessor to Rule 4(m), *Federal Rules of Civil Procedure*); *In re Cooper,* 971 F.2d 640, 641 (11th Cir.1992) (absent a showing of good cause, a district court

---

[4]The postal service returned the certified mail addressed to Roy Randy marked "Attempted - Not Known" at address.

has no discretion to salvage an action in the event of a violation of Rule 4(m)).

The time allowed for perfecting service of process on Roy Randy expired in December of 2004. Nothing before this court indicates the existence of good cause warranting an extension of the time for service. Consequently, Rogers' claim against Roy Randy is subject to dismissal without prejudice as service has not been perfected on Randy in accordance with applicable procedural rules.[5]

### B. The Negligence Claim

Rogers contends that defendant Lawrence acted with negligence when she failed to review his medical records prior to his transfer to Mississippi and to ensure availability of "need[ed] medication within the hours . . . one may be in transit." *September 28, 2004 Amendment to the Complaint - Court Doc. No. 28* at 1. The Constitution is not implicated by negligent acts of officials causing unintended loss of life, liberty or property. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (protections of the Constitution "are just not triggered by lack of due care ..."); *Chandler v. Crosby*, 379 F.3d 1278, 1289-1290 (11th Cir. 2004) (neither negligence nor gross negligence amounts to a constitutional violation). Thus, the allegedly negligent act about which Rogers complains does not rise to the level of a constitutional violation and therefore provides no basis for relief in this 42 U.S.C. § 1983 action.

### C. Deliberate Indifference

---

[5]As discussed *infra*, the claim against Roy Randy does not allege a violation of the Constitution as Rogers fails to establish the requisite elements of deliberate indifference.

8

To prevail on a claim concerning alleged denial of adequate medical treatment in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his health. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."). When seeking relief based on deliberate indifference of correctional medical personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate

9

indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'  *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."  *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk

> of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). Thus, to survive summary judgment on his claim of deliberate indifference, Rogers is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The evidentiary materials submitted by the parties demonstrate that prison medical personnel assigned Rogers to the diabetic chronic care clinic to assure continuous monitoring and treatment of his diabetes. It is likewise clear that medical personnel routinely examined Rogers, evaluated his conditions and responded in accordance with their evaluations to his myriad complaints and requests for treatment. *See Exhibit A to the November 15, 2004 Special Report of Linda Lawrence - Medical Records of Arthur Rogers*. The medical records also establish that attending physicians prescribed relevant medications in an effort to treat and stabilize Rogers' diabetes and other physical ailments. *Id.* Additionally, the evidentiary materials demonstrate that medical personnel routinely ordered special diets, lay-in profiles, blood sugar tests and additional therapeutic treatments whenever their observations of Rogers indicated the need for such action. It is also undisputed that Rogers did not consistently follow the instructions of health care personnel with respect to his diet, prescription medications and follow-up visits.

This court has conducted a thorough and exhaustive review of all the evidentiary materials submitted by the parties in this case. After such review, the court concludes that the course of treatment undertaken by the defendants was neither grossly incompetent nor inadequate. The record is completely devoid of evidence that the defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Rogers, and that the defendants actually drew this inference and thereafter ignored the known risk. Taylor has therefore failed to establish the requisite element of subjective awareness on the part of defendants. Moreover, although Rogers makes the conclusory allegation that he should have received a different mode of treatment, this assertion, without more, and in light of the acknowledged facts of this case, does not amount to deliberate indifference. *Waldrop*, 871 F.2d at 1033; *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). Additionally, to the extent Rogers relies on his dissatisfaction with the medical treatment he received as a basis for relief, the case presents "'a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545.

The record before this court contains no evidence indicating that the defendants acted with deliberate indifference to Rogers' serious medical needs. Consequently, summary judgment is due to be granted in favor of the defendants.

### *D. Legal Mail*

Rogers complains that on September 28, 2004 defendant Lawrence violated his

constitutional rights when she opened mail addressed to him from defense counsel. In response to this claim, Lawrence asserts that she inadvertently opened a piece of mail addressed to Rogers as it had been placed in her "stack of mail for the day [and] was turned upside down." *November 15, 2004 Special Report of Linda Lawrence - Court Document No. 35-2 (Affidavit of Linda Lawrence)* at 2; *November 15, 2004 Special Report of Linda Lawrence - Court Document No. 37 - Exhibit B (Affidavit of Linda Lawrence)* at 3 ("What actually occurred on that occasion is that I accidentally opened a mailing which was received from Naphcare, not realizing that it was addressed to Mr. Rogers."). Upon realizing her mistake, Lawrence maintains that she did not in any way alter the documents and promptly made arrangements for the mail to be delivered to Rogers. *November 15, 2004 Special Report of Linda Lawrence - Court Document No. 35-2 (Affidavit of Linda Lawrence)* at 2 ("I opened the package, pulled out the contents and looked at the cover page and knew it did not belong to me. I put the contents back into the envelope. I turned the package over and then looked at the address. I called the legal representative at NaphCare, Inc. to determine who should receive this package and was told to give it to the inmate. I took the envelope and contents immediately to the Lieutenant's office with instructions to give it to Mr. Rogers. I mistakenly opened the envelope . . . and I certainly did not alter the contents of the package."); *November 15, 2004 Special Report of Linda Lawrence - Court Document No. 37 - Exhibit B (Affidavit of Linda Lawrence)* at 3 ("As soon as I opened the mailing and determined that it was directed to an inmate, I placed the contents back in the

envelope and placed it in the proper channels for delivery to the inmate. . . . I did not read any of the materials in the envelope and absolutely did not in any way scrutinize, tamper with, alter, or destroy any of the contents of the envelope. I did not write anything on any of the records or documents in the envelope, nor did anyone else, to my knowledge.").

Interference with legal mail implicates an inmate's rights of access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution. The court will therefore address the instant complaint as raising each of the aforementioned claims.

1. <u>Access to Courts</u>. The law is well settled that prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court expounded on the decision in *Bounds* and required that an inmate demonstrate the existence of an "actual injury" effecting his effort to pursue a nonfrivolous legal claim to demonstrate a denial of access to the courts. Moreover, *Lewis* emphasizes that a *Bounds* violation is related to an inmate's lack of capability to present claims. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When an inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that

the presentation of such a claim is currently being prevented, because the capability of filing suit has not been provided, he demonstrates" the requisite injury. *Lewis*, 518 U.S. at 356.

Rogers has failed to come forward with any evidence that the actions of defendant Lawrence deprived him of the ***capability*** of pursing his claims in this federal civil action or in any way hindered his efforts to pursue his claims before this court. On the contrary, Rogers has demonstrated that he is proficient at presenting and arguing the claims of his choice to this court. Specifically, the record in this case demonstrates that Rogers filed numerous and lengthy pleadings in this case including, but not limited to, motions to amend, amendments to the complaint, responses to the defendants' special reports and various evidentiary materials. Consequently, nothing before the court indicates that the action about which Rogers complains in any way improperly impeded his efforts to pursue nonfrivolous legal claims before this court and, therefore, Rogers has failed to establish the requisite injury. *Lewis*, 518 U.S. at 356. In the absence of ultimate prejudice or disadvantage, defendant Lawrence is entitled to summary judgment on this claim. *See Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

2. <u>Free Speech</u>. An isolated incident of mail opening is insufficient to establish a constitutional violation. *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003) (allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm); *Florence v. Booker*, 23 Fed.Appx. 970, 972-973 (10th Cir.

2001) ("single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts."); *Berger v. White*, 12 Fed.Appx. 768, 771, (10th Cir. 2001) ("isolated incidents of opening constitutionally protected legal mail, 'without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel or to access to the courts,' do not support a civil rights claim. *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)"); *Gardner v. Howard,* 109 F.3d 427, 431 (8th Cir. 1997) (isolated incident of inadvertent opening of inmate's incoming legal mail, without evidence of improper motive or resulting interference with inmate's right to counsel or access to courts, does not rise to level of constitutional violation); *Stevenson v. Koskey,* 877 F.2d 1435, 1441 (9th Cir. 1989) (inadvertent opening of an inmate's legal mail, while not to be condoned, constitutes mere negligence and does not rise to the level of a constitutional rights violation cognizable under 42 U.S.C. § 1983). Therefore, Rogers' First Amendment claim is clearly without merit.

As previously determined, Rogers has failed to demonstrate that the opening of his mail denied him access to the court. Moreover, he has utterly and completely failed to demonstrate that defendant Lawrence's action resulted from improper motivation. In light of the foregoing, the court concludes that the isolated and inadvertent opening of Rogers' mail by defendant Lawrence did not rise to the level of a constitutional violation. Summary judgment is therefore due to be granted on this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motions for summary judgment filed by the defendants be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before June 5, 2006 the parties may file objections to the Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

DONE, this 23rd day of May, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE